DAVID M. ROSENBERG-WOHL (Cal. Bar No. 132924)
HERSHENSON ROSENBERG-WOHL,
A PROFESSIONAL CORPORATION
3080 Washington St.
San Francisco, CA 94115
(415) 317-7756
david@hrw-law.com

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN GROVEMAN,<br><br>Plaintiff,<br><br>vs.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA, MICHAEL V. DRAKE, GARY S. MAY, MARY CROUGHAN, RENETTA GARRISON TULL, CLARE SHINNERL, PABLO REGUERIN, AND DOES 1-10,<br><br>Defendants. | Case No.: 2:24-cv-01421-DJC-AC<br><br>**AM. COMPLAINT** |

**JURISDICTION & VENUE**

1. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 2000d et. seq., and 42 U.S.C. § 12131 et seq.

2. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction of suits brought pursuant to 42 U.S.C. § 1983. Jurisdiction is also conferred on this Court by 28 U.S.C. § 1331 because the causes of action arise under the Constitution and laws of the United States.

AM. COMPLAINT - 1

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, upon information and belief, Defendants reside in the Eastern District of California and may be found and served in the Eastern District of California, and because a substantial part of the events, acts, or omissions giving rise to these claims arose in this District, County of Yolo.

**PARTIES**

4. Plaintiff **Jonathan Groveman** is a resident of Davis, California, County of Yolo, and a member of the UC Davis community.

5. Defendant **Regents of the University of California** is a public agency within the meaning of Cal. Gov't Code § 7920.525(a) and is empowered under the California Constitution, Article IX, Section 9, to administer the University of California.

6. Defendant **Michael V. Drake** is sued in his official capacity as President of the University of California.  As President, Defendant Drake oversees the University of California system, including UC Davis. Allowing the Encampment (defined in paragraph 12 below) that is the focus of this complaint is ultimately his responsibility; on information and belief he was aware of it and of the way in which it both dominated and thwarted access to the campus, and he chose to allow it to continue. By way of Plaintiff's contact with Regents Police representative Wade Stern, police were primed to intervene regarding the Encampment numerous times but were "waived off" by the Regents. On information and belief, this is a legacy of the "Pepper Spray" incident in which the UC Davis police used pepper spray against student demonstrators in a 2011 "Occupy movement" demonstration on campus to great public outcry leading to protestations by then current UC Davis

AM. COMPLAINT - 2

1. Chancellor Linda Katehi that the police had acted against her orders. The message "remember the pepper spray" was posted at the entrance to the Encampment.

7. Defendant **Gary S. May** is sued in his official capacity as the Chancellor of UC Davis and in his individual capacity.  As Chancellor, Defendant May is the Chief Executive Officer for the Davis campus.  His duties include setting the policies, goals, and strategic direction for his campus, consistent with those of the University. Allowing the encampment that is the focus of this complaint is in significant part his responsibility; on information and belief he was aware of it and of the way in which it both dominated and thwarted access to the campus, and he chose to allow it to continue pursuant to the official policy of Regents. In the exercise of his responsibility, May was constrained by no specific policies nor regulations that dictated his response to the Encampment, described below; his response was his own, making him personally complicit in the deprivation of Plaintiff's rights. On information and belief, May negotiated with the group that came to be known as the Davis Popular University for the Liberation of Palestine ("PULP") in advance of the Encampment being set up regarding its location, supplanting of the Whole Earth Festival that historically had taken place at that time and location – all outside of his authority. On information and belief, as presented publicly by Davis Popular University for the Liberation of Palestine ("PULP") May subsequently reached a "settlement" with the Regents – a settlement that was also outside of his authority. Plaintiff directly sought redress from May for the actions detailed herein through his chief counsel Mike Sweeny and Chief of Police Joe Farrow, along with the Director of Support Services Christina Blackman. May never responded to Plaintiff.

AM. COMPLAINT - 3

8. Defendant **Mary Croughan** is sued in her official capacity as Provost and Executive Vice Chancellor of UC Davis and in her individual capacity.  Defendant Croughan is responsible for UC Davis' day-to-day operations, as well as the planning, quality, and delivery of education provided to UC Davis' students, parents, alumni, and to the Davis community as a whole. Allowing the encampment that is the focus of this complaint is in significant part her responsibility; on information and belief she was aware of it and of the way in which it both dominated and thwarted access to the campus, and she chose to allow it to continue pursuant to the official policy of Regents. In the exercise of her responsibility, Croughan was constrained by no specific policies nor regulations that dictated his response to the Encampment, described below; her response was her own, making her personally complicit in the deprivation of Plaintiff's rights. According to defendant Reguerin, the Provost's office "took the lead" in fielding and addressing concerns arising out of the recent Israel-Palesting conflict; such a portfolio necessarily includes the Encampment.

9. Defendant **Renetta Garrison Tull** is sued in her official capacity as Vice Chancellor for Diversity, Equity and Inclusion and Co-Chair, Next Generation Campus Safety Task Force and in her individual capacity. Allowing the encampment that is the focus of this complaint is in significant part her responsibility; on information and belief she was aware of it and of the way in which it both dominated and thwarted access to the campus, and she chose to allow it to continue pursuant to the official policy of Regents. In the exercise of her responsibility, Tull was constrained by no specific policies nor regulations that dictated her response to the Encampment, described below; her response was his own, making her personally complicit in the deprivation of Plaintiff's rights. On information and belief, based upon both her public statements from 2021 and her recent conspicuous silence, Ms.

AM. COMPLAINT - 4

Tull believes that anti-Zionism has nothing to do with antisemitism and that expression thereof is inherently not problematic under the First Amendment, and that expressing concern about the Encampment is inherently Islamophobic, that such beliefs have underscored her personal permission for the Encampment, and that her position is factually and legally unsupportable.

10. Defendant **Clare Shinnerl** is sued in her official capacity as Vice Chancellor for Finance, Operations & Administration and in her individual capacity. Allowing the encampment that is the focus of this complaint is in significant part her responsibility; on information and belief she was aware of it and of the way in which it both dominated and thwarted access to the campus, and she chose to allow it to continue pursuant to the official policy of Regents. In the exercise of her responsibility, Shinnerl was constrained by no specific policies nor regulations that dictated her response to the Encampment, described below; her response was her own, making her personally complicit in the deprivation of Plaintiff's rights. Shinnerl's portfolio includes safety on campus; on information and belief she was aware of the violent aggression (including stabbing with umbrella points) with which certain participants in the Encampment fended off interlocutors or documenters from the UC Davis community and did nothing about it.

11. Defendant **Pablo Reguerin** is sued in his official capacity as Vice Chancellor for Student Affairs and in his individual capacity. Allowing the encampment that is the focus of this complaint is in significant part his responsibility; on information and belief he was aware of it and of the way in which it both dominated and thwarted access to the campus, and he chose to allow it to continue pursuant to the official policy of Regents. In the exercise of his responsibility, Reguerin was constrained by no specific policies nor regulations that

AM. COMPLAINT - 5

dictated his response to the Encampment, described below; his response was his own, making him personally complicit in the deprivation of Plaintiff's rights. Reguerin was a fixture at the Encampment, lending both protection to it and encouragement to its participants, UC Davis affiliates or no. On at least one occasion he accused protestors among whose group is Plaintiff of exacerbating tensions on campus by documenting PULP activity, while he was visibly and demonstrably collegial to those within the Encampment. According to May, the office headed by defendant Reguerin is tasked with explaining responsible speech; in this role he has served to foster divisions rather than bring the parties together.

**FACTS**

12. By May 7, 2024, UC Davis allowed an encampment (the "Encampment") to be situated at the Quad, at the very center of campus life and transit. On information and belief, this was not done in accord with either Policy 400-10 (no overnight camping without permitting) or Policy 270-20 (permitting reservations).

13. Any student or member of the public wishing to traverse the campus through its central artery became compelled to encounter the Encampment and interact physically and emotionally with it.

14. The Encampment has been comprised of individuals who are vehemently opposed to the existence of the State of Israel, to any self-determination for Jews living in what is presently the State of Israel, the West Bank or the Gaza Strip, or any part of the British Palestinian Mandate historically occupied by Jews, proposed as a state for Jews, accepted

AM. COMPLAINT - 6

as a state for Jews, and fought for as a state for Jews (often phrased as "From River to Sea"), and to the residence of anyone of Jewish within this land, whether by intent or effect.

15. The Encampment has been comprised of individuals who are vehemently supportive of Hamas and its express desire to extinguish not just Israeli life within the geographic boundaries of the Israeli state but wherever they may live, whether in Israel proper or the West Bank or Gaza Strip, but even Israelis and Jews wherever they may live in the world. This is the text of the charter of Hamas, and it is the meaning of "Globalize the Intifada."

16. On information and belief, a significant number of the individuals who participated in the Encampment were/are not UC Davis students or members of the university community.

17. By May 7, 2024, the Encampment was an exclusive zone, welcoming and tolerant only of like-minded extremists. The Encampment was maintained as a "Zionist-free zone" from which Zionists and those suspected of being Zionists were excluded and/or blocked. Any students or members of the public wanting to engage with the Encampment who did not express alliance with the Encampment's cause were rebuffed by furious personal attack, including by halting with hands on arms or bodies, by shoving, by weaponized umbrellas jabbed towards the face, and by screaming racially and ethnically charged invectives.

18. By May 8, 2024, the Encampment was walled off on its southern side, creating a physical barrier to enhance the social barrier and eliminating the possibility for anyone to cross campus through the Quad.

19. On or about June 20, 2024, around the close of the school year, the individuals responsible for the Encampment began to dismantle it. They did so following negotiations with Defendants to secure demands that were posted at the entryway during the first week that erected the encampment, including: "Disclose and Divest: End UC Complicity" and "Total

AM. COMPLAINT - 7

Academic and Cultural Boycott (Cancel Koret study abroad)," which demanded U.C. Davis to cut its ties to the State of Israel, and challenging the UC Davis veterinary school's "racist Zionist faculty members." As reported by the Davis Popular University for the Liberation of Palestine, these meetings "began a process for soliciting and implementing student feedback on the UC Davis Foundation's existing and potential future factors that could bar investments …" among other topics, while avoiding any written commitments. As reported by Chancellor Gary May: "The university facilitated a meeting between PULP student leaders and UC Davis Foundation trustees, who provided information about the University of California's investment principles and processes. In another meeting, representatives of the UC Davis Academic Senate provided insight into the ways faculty research is funded and the autonomy and academic freedom of individual researchers. In another meeting, leaders from the School of Veterinary Medicine shared the history and principles underlying the school's collaboration with a similar school in Jerusalem."

20. Concerning the future semester(s), Chancellor May stated: "We remain committed to ongoing discussions with our students, transparency in university operations, and supporting students' rights to express their viewpoints. While we decry the loss of innocent life on both sides of this war, including in Israel, we acknowledge the efforts of our students to peacefully protest the humanitarian crisis and staggering loss of life in Gaza, the West Bank and Palestine. Protesting immense human suffering and destruction should not be conflated with hatred or intolerance."

**PLAINTIFF**

21. Plaintiff is on the UC Davis campus regularly. There are a number of activities that bring him there throughout each month. These include, but are not limited to, activities related

AM. COMPLAINT - 8

to his full-time job (meetings and events), events related to his family (his daughter plays in the Davis high school orchestra and they are regularly on campus), exercise, and other non-work related campus events that he is eager to participate in.

22. Plaintiff was on campus on May 7 to provide support to the counter dialogue against the Encampment and to support Jewish faculty and staff. He attempted to get from the North side of the Quad path to the South side. There were "guard stations" set up on both sides and blocked. He said he needed to walk to the other side and was told to "go around". He explained that he is a disabled veteran and that he needed to stay on the concrete, stable footpath. Once again, he was told to "go around." He asked to speak to the student in charge of the Encampment, at which point he was accused of being a "Zionist," was told "Zionists are not welcome," and to "go away." He was struck twice in the face with the sharp end of an umbrella.

23. Having been near the Quad and its path multiple times, Plaintiff is regularly labeled a "Zionist" and not allowed to get within 20' of the guard post. He sent an email to UCDPD Chief Farrow and the UCD Chancellor May about the incident.

24. As everyone within the encampment had their faces completely concealed by head cloths, there is no way for Plaintiff to identify anyone involved in thwarting his access or hitting him. Only two people within the Encampment are identifiable - Hannah Zeltzer and Stanford McConnehey - but neither were the two he encountered at the "guard post".

25. Due to Plaintiff's Veterans Administration service-connected disability, Plaintiff needs to refrain from activity on uneven surfaces. Navigating on the grass, and even on decomposed granite paths, puts him at risk. He is VA-rated for both knees, his lower and upper back areas, and he has Meniere's Disease, which gives him spells of vertigo.

AM. COMPLAINT - 9

26. On May 10th, and again on May 14, Plaintiff wrote to UC Davis Chief Counsel Mike Sweeney. Mr. Sweeny did not respond. On May 17, Plaintiff received a response from Wendi Delmendo, UC Davis' Chief Compliance Officer in her role as ADA Coordinator. In this response, UC Davis accepted that the path through the Quad was inaccessible and told Plaintiff he was required to use a different path.

27. On information and belief, student groups hostile to what they call Zionism and supportive of the military and political aims of Hamas have been gathering throughout the United States this summer to determine how best to continue protests, including encampments, in the upcoming Fall semester and beyond. News reports quote students involved in encampments threatening that encampments will return if universities do not accede to their demands. Based upon the results of the negotiation on or about June 20, 2024 that led to the dismantling of the Encampment, as reported above, there is every reason to believe that both the Encampment and the negotiations will continue at UC Davis this Fall.

28. On August 19, 2024, Michael Drake, President of the University of California, wrote to the chancellors of each of the University of California campuses, including UC Davis, "directing each campus to provide, in a single document or webpage, a compilation of existing policies that most commonly apply to protest and demonstration activity. This information must be made available prior to the Fall 2024 academic term and include the following policy requirements:

• _Camping or encampments: Policies must clarify that no person shall camp, set up or erect a campsite, or occupy a tent or other temporary housing structure on University property, unless specifically pre-approved.

• _Unauthorized structures: Policies must clarify that no person shall erect, build, construct, set up, establish and/or maintain unauthorized structures on University property.

AM. COMPLAINT - 10

• _Restricting free movement: Policies must clarify that no person shall restrict the movement of another person or persons by, among other means, blocking or obstructing their ingress or egress of roadways, walkways, buildings, parking structures, fire lanes, windows, doors or other passageways to university property, or otherwise denying a person access to a University facility or space.

• _Masking to conceal identity: Policies must clarify that no person shall wear a mask or personal disguise or otherwise conceal their identity with the intent of intimidating any person or group, or for the purpose of evading or escaping discovery, recognition, or identification in the commission of violations of law or policy.

• _Refusal to reveal identity: Policies must clarify that no person shall refuse to identify themselves while on University property to University officials who are acting in the performance of their duties in situations where assistance or intervention is needed.
I expect that most of our campuses have existing policies that cover the areas listed above. To the extent that this is not the case at your campus, your campus should develop and/or amend policies as soon as possible. Please note that the policy descriptions above are intended to be illustrative, and your own policies may use different language to achieve the same effect.

29. The UC Davis academic year begins Monday, September 23. As of today, Wednesday, September 4, neither Defendant May nor any administrator at UC Davis has embraced the direction of Defendant Drake and the Regents regarding the development and/or enforcement of such regulations or policies.

30. UC Davis' website "freespeeech.ucdavis.edu/learn/policies" provide links to policies but a search for "encampment," "camping," and "overnight" yields "no results." So too regarding a search for "mask" or "masking."

31. There is a new policy addressing "overnight camping," to be sure. *See* PPM 400-01 (IV.B.2.f), 8/21/24. On its face, this would appear to address the Regents' recent direction "that no person shall camp, set up or erect a campsite, or occupy a tent or other temporary housing structure on University property, unless specifically pre-approved" (*see* paragraph 28 above). But UC Davis had such a policy in place during the Encampment. *See* Section 400-01, dated 8/30/14, reissued 9/19/19 (IV.B.2.h), "Use of University

AM. COMPLAINT - 11

properties for overnight camping is generally prohibited absent express permission by the University (see Section 270-20)." On information and belief, UC Davis didn't grant express permission for the Encampment under Section 270-20 yet embraced the Encampment anyway, contrary to policy. Nothing has changed: it's *still* against policy – there is no reason to think one policy will be enforced where the other was not, especially since the new UC Davis policy enumerates no consequences for an Encampment in violation of policy.

32. More, the policies are expressly limited to RSOs. Davis Popular University for the Liberation of Palestine is not presently a registered student organization at UC Davis.

33. Nor, in Defendant May's statement upon the dismantling of the Encampment, say May that students had violated any regulation or policy of the UC Davis; by contrast, he exclusively lauded the behavior of Encampment participants and touted his ability to negotiate fruitfully with them, stating "We remain committed to ongoing discussions with our students, transparency in university operations, and supporting students' rights to express their viewpoints." This statement, combined with May's silence regarding the recent Regents' directives, speaks volumes about his likely approach to future conflict – more of the same.

34. There is a conflict of interest between Defendant May's role with UC Davis and his membership on the board of directors of Leidos, a company that works with the Israeli Ministry of Defense. Note: Plaintiff does not say that there is *anything* wrong with May's board membership – just that it subjects him to repeated personal scrutiny (to resign from Leidos or as chancellor) and specifically to calls for him to resign and distance himself from the company. On information and belief, May tries to thread the needle between

AM. COMPLAINT - 12

appearing to be supportive of Jewish/Israeli/those perceived as Zionists, because of the risk of heightening his personal exposure through Leidos, on the one hand, and supportive of what he would like to characterize as the free speech rights of those involved in the Encampment, on the other hand, which serves to insulate him from this personal exposure.

35. Indeed on or about November 7, Defendant May had told Students for Justice in Palestine criticizing his Leidos board membership as supporting genocide that while he didn't support genocide, the war in Gaza itself was "genocide" and that he would support SJP students "through this genocide." When confronted with evidence and argument that there was, in fact, no genocide taking place in Gaza, Defendant May showed he did not actually care about either the truth or the effect of embracing that word on campus, saying "Okay, I will use that word if it helps me get to my next talking point."

36. In short, if indeed UC Davis has attempted to comply with the Regents' recent directive, it has done so in a way to maximize its ability to allow an encampment as before out of its sympathy to one particular viewpoint over those of others and not put any safeguards in place to protect against an encampment that dominates campus, interferes with campus access, or otherwise is in violation of UC Davis policy.

**COUNT I**
**Violation of 42 U.S.C. § 1983 (Equal Protection Clause)**
**(on Behalf of Plaintiff Against Individual Defendants)**

37. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs 1-36.

38. Under the Fourteenth Amendment to the United States Constitution, a State shall not "deny to any person within its jurisdiction the equal protection of the laws." Defendants, in their official capacities, work for the State. In their official capacities, and (with the

AM. COMPLAINT - 13

exception of Defendant Drake) in their personal capacities, Defendants have deprived Plaintiff of equal protection of the laws, as secured by the Fourteenth Amendment, through a policy and practice that treats Plaintiff differently because Plaintiff is Jewish, has family that is Jewish, and identifies with Zionism. Plaintiff was denied access to the public space he calls home and its community, and that is because Defendants reserved it for a small set of extremists.

39. Specifically, Defendants have selectively chosen not to enforce the official policies of UC Davis and the University of California generally, including antidiscrimination policies, codes of conduct, requirements for founding, maintaining and enforcing rules on campus organizations, overnight camping, and requirements permitting, and other time, place and manner restrictions, all designed to make the UC Davis campus a place for the robust and respectful free expression of ideas instead of holding it hostage to, and effectively adopting, only one extremist view. Defendants have knowingly permitted individuals in the Encampment to be and remain masked, interfering with the enforcement of UC Davis policies and threatening to those who approach them or who are compelled to keep their distance. Defendants are aware that enforcement of existing policies would permit an encampment, if at all, in a way that did not condone one small group's taking over the campus itself to the exclusion of those with which it disagrees.

40. As a result of Defendants' conduct, Plaintiff has suffered significant injuries. This includes emotional distress for assault and battery, not to mention harassment, as well as for the imposition upon Plaintiff of second-class inferior status by the State institution he calls home.

**COUNT II**
**Violation of 28 U.S.C. § 1983 (Free Exercise Clause)**

AM. COMPLAINT - 14

**(On Behalf of Plaintiff Against Individual Defendants)**

41. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs 1-40.

42. Under the Fourteenth Amendment to the United States Constitution, the State may not thwart the right to express one's religious identity freely. The Free Exercise Clause of the First Amendment guarantees "the right to … profess whatever religious doctrine one desires." *Employment Div., Dept. of Hum. Res. of Or. v. Smith* 494 U.S. 872, 877 (1990).

43. In their official capacities, and (with the exception of Defendant Drake, in their individual capacities), Defendants have deprived Plaintiff of the right to express his Jewish identity freely, and in particular his view of Zionism, through allowing the Encampment to thwart religious dialog and rebuff any discussion that would recognize the possibility of either a Zionist viewpoint, whether intrinsic to Jewish religious belief or otherwise.

44. As a result of Defendants' establishment and toleration of the Encampment, as situated and allowed, Plaintiff was unable to access campus political life due to his religious identity and his Zionist viewpoint, infused by his religion, where he would like to engage so as to express both.

45. Defendants recognize that they have established, encouraged, and refused to constrain the Encampment so that it likely interferes with the Free Exercise Clause in order to present a pro-student and pro-protest image, along with sympathy to the Palestinian cause over that of Israelis, Jews and Zionists.

46. As a result of Defendants' conduct, Plaintiff suffered significant injuries. This includes emotional distress for assault and battery, not to mention harassment, as well as for the

imposition upon Plaintiff of second-class inferior status by the State institution he calls home.

**COUNT III**
**Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.**
**(On Behalf of All Plaintiff Against All Defendants)**

47. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs 1-46.

48. UC Davis receives financial assistance from the U.S. Department of Education and is therefore subject to suit under Title VI of the Civil Rights Act of 1964.

49. That Act states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

50. The establishment and toleration of the Encampment, as situated and allowed, violated Title VI because the individuals of the Encampment believe that Jews and Israelis are a race, that Jews and Israelis are inherently "white" of color, especially to the extent they identify with Zionism, and that Jews and Israelis have a "national origin" from anywhere that is not presently the State of Israel, most often identified as originating in Eastern Europe.

51. Discrimination against Jews themselves is likewise prohibited under Title VI of the Civil Rights Act of 1964, as reflected in numerous written policies of the Department of Education's Office for Civil Rights. On November 7, 2023, OCR issued a new Dear Colleague Letter, reminding schools that receive federal financial assistance that they have a responsibility to address discrimination against Jewish, Muslim, Sikh, Hindu,

AM. COMPLAINT - 16

Christian, and Buddhist students, or those of another religious group, when the discrimination involves racial, ethnic, or ancestral slurs or stereotypes; when the discrimination is based on a student's skin color, physical features, or style of dress that reflects both ethnic and religious traditions; and when the discrimination is based on where a student came from or is perceived to have come from, including discrimination based on a student's foreign accent; a student's foreign name, including names commonly associated with particular shared ancestry or ethnic characteristics; or a student speaking a foreign language. . . Harassing conduct, the letter made clear, could be verbal or physical and need not be directed at a particular individual.

52. OCR makes clear that the illegal "harassment" that "creates a hostile environment" is that which "limits or denies a person's ability to participate in or benefit from the recipient's education program or activity."

53. Plaintiff was unable to either participate in or benefit from political debate that is an essential part of the academic environment assured by UC Davis' receipt of federal funds. Separately, Plaintiff could not access any part of the campus as all students and members of the community should, with the Quad and main artery of campus access cut off by the Encampment.

54. As a result of Defendants' establishment and toleration of the Encampment, as situated and allowed, Plaintiff was unable to access, participate in and benefit from campus political life due to his religious identity and his Zionist viewpoint, infused by his religion, where he would like to engage so as to express both.

55. Defendants recognize that they have established, encouraged, allowed and refused to constrain the Encampment so that it interferes with Title VI in order to present a pro-

AM. COMPLAINT - 17

student and pro-protest image, along with sympathy to the Palestinian cause over that of Israelis, Jews and Zionists.

56. As a result of Defendants' conduct, Plaintiff suffered significant injuries. This includes emotional distress for assault and battery, not to mention harassment, as well as for the imposition upon Plaintiff of second-class inferior status by the State institution he calls home.

57. Without a declaration that the Encampment, as allowed, violated the law, it is likely that a similar Encampment will be established this Fall.

**COUNT IV**
**Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. (On Behalf Plaintiff Against All Defendants)**

58. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs 1-57.

59. Plaintiff is a disabled person as defined in 42 U.S.C § 12102, as he has "a physical impairment that substantially limits one or more major life activities." Specifically, Plaintiff has an impairment that requires him to walk on even and stable ground, such as pavement. He cannot walk safely on grass, so he could not circumvent the Encampment. He cannot walk safely on the decomposed granite surface that constitutes many of the paths surrounding and accessing UC Davis. He needs the smooth and stable path of asphalt or concrete, which is precisely what the main artery through the Quad provides and was blocked by the Encampment.

60. Because of the blockade at the center of campus, Plaintiff was "excluded from participation in" and "be[en] denied the benefits of the services, programs, or activities of a public entity."

AM. COMPLAINT - 18

61. As a result of Defendants' conduct, Plaintiff suffered significant injuries. This includes emotional distress for assault and battery, not to mention harassment, as well as the imposition upon Plaintiff of second-class inferior status by the State institution he calls home.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court order the following relief:

A. Declaratory judgment that the Encampment as allowed violated the Equal Protection Clause, that the Encampment as allowed violated the Free Exercise Clause, that the Encampment as allowed violated Title VI and that the Encampment as allowed violated the ADA.

B. Because without this Court's intervention, the Encampment is likely to resume in the Fall, an injunction is required enjoining Defendants from permitting any Encampment to obstruct the central artery of UC Davis and the Quad so as to violate the Equal Protection Clause, from permitting any Encampment to obstruct the central artery of UC Davis and the Quad so as to violate the Free Exercise Clause, from permitting the Encampment to obstruct the central artery of UC Davis and the Quad so as to violate Title VI, and from permitting the Encampment to obstruct the central artery of UC Davis and the Quad so as to violate the ADA.

C. Compensatory financial relief.

D. Punitive and/or exemplary damages.

E. Nominal damages, both in an amount sufficient to compensate for violation of Plaintiff's legal rights, and on a daily basis, for the period of the Encampment.

AM. COMPLAINT - 19

F.  Plaintiff's reasonable attorneys' fees pursuant to statute.

G.  Any other relief which this Court may deem just and proper.

**JURY DEMAND**

Plaintiffs respectfully request a jury trial on all issues triable thereby.

Dated this 4th of September, 2024.

/s/ David M. Rosenberg-Wohl

David M. Rosenberg-Wohl

HERSHENSON ROSENBERG-WOHL
A PROFESSIONAL CORPORATION

AM. COMPLAINT - 20