MATTHEW R. COWAN (S.B. #281114)
mcowan@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Floor
Los Angeles, California 90071-2899
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407

MEAGHAN VERGOW*
mvergow@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone:   (202) 383-5300
Facsimile:    (202) 383-5414

ANTON METLITSKY*
ametlitsky@omm.com
JENNIFER SOKOLER*
jsokoler@omm.com
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone:   (212) 326-2000
Facsimile:    (212) 326-2061

*Attorneys for Defendants*

*Admitted pro hac vice*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN GROVEMAN,<br><br>                    Plaintiff,<br><br>          v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA, MICHAEL V. DRAKE, GARY S. MAY, MARY CROUGHAN, RENETTA GARRISON TULL, CLARE SHINNERL, PABLO REGUERIN, AND DOES 1-10,<br><br>                    Defendants. | Case No. 2:24-cv-01421-DJC-AC<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>*Accompanying Documents*:<br>Notice of Motion and Motion to Dismiss; Declaration of Matthew R. Cowan; Request for Judicial Notice<br><br> Date:       1/9/2025<br> Time:       1:30 PM<br> Courtroom: 10, 13th Floor<br> Judge:      Hon. Daniel J. Calabretta |

1

**TABLE OF CONTENTS**

2

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ..........................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND.................................................3

III.   LEGAL STANDARD........................................................................................5

IV.    ARGUMENT ...................................................................................................5

     A.     PLAINTIFF'S SECTION 1983 CLAIMS, ASSERTED SOLELY
          AGAINST THE INDIVIDUAL DEFENDANTS, SHOULD BE
          DISMISSED. ..........................................................................................5

          1.    Plaintiffs' Section 1983 claims against the Individual
              Defendants fail because they do not allege state action.................6

          2.    Plaintiff fails to allege an Equal Protection or a Free Exercise
              Clause violation against the Individual Defendants. .......................7

              a.   Plaintiff fails to state an Equal Protection claim. ..................7

              b.   Plaintiff fails to state a Free Exercise claim.........................8

          3.    Plaintiff's official-capacity Section 1983 claims against the
              Individual Defendants are barred by sovereign immunity to
              the extent Plaintiff seeks monetary damages. ................................9

          4.    Plaintiff's individual-capacity Section 1983 claims against the
              Individual Defendants are barred by qualified immunity to the
              extent Plaintiff seeks monetary damages. ....................................10

     B.     PLAINTIFF'S TITLE VI CLAIM SHOULD BE DISMISSED FOR
          LACK OF STATUTORY STANDING AND FAILURE TO STATE A
          CLAIM. ..............................................................................................11

          1.    As a non-student, Plaintiff lacks standing to assert a Title VI
              claim. ..........................................................................................12

          2.    Plaintiff also fails to allege the elements of a Title VI claim. ..........12

     C.     PLAINTIFF'S ADA CLAIM SHOULD BE DISMISSED FOR FAILURE
          TO STATE A CLAIM. .........................................................................15

          1.    Plaintiff has failed to plead that he was excluded from
              participation in or denied the benefits of the University's
              services, programs, or activities. ...................................................15

          2.    Plaintiff's claim for money damages fails because the FAC
              does not adequately allege deliberate indifference. ......................16

     D.     PLAINTIFF'S DEMAND FOR PUNITIVE DAMAGES SHOULD BE
          DISMISSED. ......................................................................................17

V.     CONCLUSION ..............................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ................................................................................................12

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011) ................................................................................................10

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................................5

*Barnes v. Gorman,*
536 U.S. 181 (2002) ..........................................................................................13, 17

*Barry v. Yosemite Cmty. Coll. Dist.,*
2017 WL 896307 (E.D. Cal. Mar. 7, 2017) .............................................................11

*Becker v. Oregon,*
170 F. Supp. 2d 1061 (D. Or. 2001) ........................................................................15

*Belgau v. Inslee,*
975 F.3d 940 (9th Cir. 2020) .....................................................................................6

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................................................................5

*Blum v. Yaretsky,*
457 U.S. 991 (1982) ..................................................................................................6

*Braunstein v. Ariz. Dep't of Transp.,*
683 F.3d 1177 (9th Cir. 2012) .................................................................................11

*Brown v. Arizona,*
82 F.4th 863 (9th Cir. 2023) ....................................................................................14

*Cal. Parents for Equalization of Educ. Materials v. Torlakson,*
267 F. Supp. 3d 1218 (N.D. Cal. 2017) ....................................................................9

*Cohen v. City of Culver City,*
754 F.3d 690 (9th Cir. 2014) ...................................................................................15

*Csutoras v. Paradise High Sch.,*
12 F.4th 960 (9th Cir. 2021) ....................................................................................13

*Dang v. Cross,*
422 F.3d 800 (9th Cir. 2005) ...................................................................................18

*Daubert v. Lindsay Unified Sch. Dist.,*
760 F.3d 982 (9th Cir. 2014) ...................................................................................15

*Davis v. Monroe Cnty. Bd. of Educ.,*
526 U.S. 629 (1999) ..........................................................................................13, 14

*District of Columbia v. Wesby,*
583 U.S. 48 (2018) ...................................................................................................11

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Duvall v. County of Kitsap*,
  260 F.3d 1124 (9th Cir. 2001) ............................................................................. 15, 17

*Epileptic Found. v. City & Cnty. of Maui*,
  300 F. Supp. 2d 1003 (D. Haw. 2003) ........................................................................ 12

*Feied v. Regents of Univ. of Cal.*,
  188 F. App'x 559 (9th Cir. 2006) ................................................................................ 9

*Felber v. Yudof*,
  851 F. Supp. 2d 1182 (N.D. Cal. 2011) ........................................................................ 6

*Flint v. Dennison*,
  488 F.3d 816 (9th Cir. 2007) ..................................................................................... 9

*Grove v. Mead Sch. Dist.*,
  753 F.2d 1528 (9th Cir. 1985), *aff'd*, 973 F.3d 1010 (9th Cir. 2020) ........................... 9

*Hariri v. Portland State Univ.*,
  2016 WL 2595476 (D. Or. May 5, 2016) ................................................................... 11

*Hope v. Pelzer*,
  536 U.S. 730 (2002) ................................................................................................ 10

*Jacobi v. Ergen*,
  2015 WL 1442223 (D. Nev. Mar. 30, 2015) ................................................................ 6

*Jones v. County of Tulare*,
  2023 WL 4086886 (E.D. Cal. June 20, 2023) ............................................................. 18

*Jones v. Williams*,
  791 F.3d 1023 (9th Cir. 2015) .................................................................................... 8

*Karasek v. Regents of Univ. of Cal.*,
  956 F.3d 1093 (9th Cir. 2020) .................................................................................. 13

*Kennedy v. Bremerton Sch. Dist.*,
  597 U.S. 507 (2022) .................................................................................................. 8

*Kirola v. City & Cnty. of San Francisco*,
  860 F.3d 1164 (9th Cir. 2017) .................................................................................. 16

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ...................................................................................... 8

*Martin v. Almeida*,
  2007 WL 582430 (E.D. Cal. Feb. 14, 2007) ............................................................... 15

*Maynard v. City of San Jose*,
  37 F.3d 1396 (9th Cir. 1994) ...................................................................................... 7

*Meinecke v. City of Seattle*,
  99 F.4th 514 (9th Cir. 2024) .................................................................................... 11

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Memmer v. Marin Cnty. Cts.*,
    169 F.3d 630 (9th Cir. 1999) ...................................................................17

*Monteiro v. Tempe Union High Sch. Dist.*,
    158 F.3d 1022 (9th Cir. 1998) ..................................................................7

*Mosavi v. Mt. San Antonio Coll.*,
    805 F. App'x 502 (9th Cir. 2020) .............................................................14

*Pers. Adm'r of Mass. v. Feeney*,
    442 U.S. 256 (1979)...............................................................................7

*Pistor v. Garcia*,
    791 F.3d 1104 (9th Cir. 2015) ..................................................................5

*Posey v. S.F. Unified Sch. Dist.*,
    2023 WL 8420895 (N.D. Cal. Dec. 4, 2023)...........................................12

*Regents of Univ. of Cal. v. Doe*,
    519 U.S. 425 (1997)...............................................................................9

*Riley's Am. Heritage Farms v. Elsasser*,
    32 F.4th 707 (9th Cir. 2022) ...................................................................10

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*,
    44 F.4th 867 (9th Cir. 2022) ...................................................................10

*Sampson v. Cnty. of Los Angeles by and through Los Angeles Cnty. Dep't of Child. & Fam. Servs.*,
    974 F.3d 1012 (9th Cir. 2020) ................................................................10

*Saroya v. Univ. of Pac.*,
    503 F. Supp. 3d 986 (N.D. Cal. 2020) ......................................................3

*Sch. Dist. of Abington Twp. v. Schempp*,
    374 U.S. 203 (1963)...............................................................................6

*Shooter v. Arizona*,
    4 F.4th 955 (9th Cir. 2021) .....................................................................7

*Smith v. Cal. Bd. of Educ.*,
    2014 WL 5846990 (C.D. Cal. Nov. 10, 2014)........................................12

*StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.*,
    2024 WL 3596916 (D. Mass. July 30, 2024) .........................................14

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ..................................................................5

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023)..............................................................................13

*Taylor v. Barkes*,
    575 U.S. 822 (2015)..............................................................................10

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Thompson v. Rahr*,
    885 F.3d 582 (9th Cir. 2018) ................................................................ 11

*Twede v. Univ. of Wash.*,
    309 F. Supp. 3d 886 (W.D. Wash. 2018) ................................................ 16

*United States v. County of Maricopa*,
    889 F.3d 648 (9th Cir. 2018) ................................................................ 13

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) .................................................................. 3

*Vacek v. U.S. Postal Serv.*,
    447 F.3d 1248 (9th Cir. 2006) ................................................................ 5

*Vahora v. Valley Diagnostic Lab'y Inc.*,
    2020 WL 1061470 (E.D. Cal. Mar. 5, 2020) ............................................ 6

*Welk v. Cal. Dep't of Corr.*,
    2019 WL 4745272 (E.D. Cal. Sept. 30, 2019), *rep. & recommendation
    adopted*, 2020 WL 568888 (E.D. Cal. Feb. 5, 2020) .............................. 15

*Wells v. Bd. of Trs. of Cal. State Univ.*,
    393 F. Supp. 2d 990 (N.D. Cal. 2005) .................................................... 18

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) ................................................................ 18

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989) ................................................................................ 9

## **Statutes**

42 U.S.C. § 1983 ...................................................................................... 1, 4

42 U.S.C. § 2000d .................................................................................. 11, 12

## **Rules and Regulations**

28 C.F.R. § 35.150(a) ................................................................................ 16

2010 ADA Accessibility Guidelines for Buildings and Facilities,
    36 C.F.R. pt.1191, Ex. B, § 206.2.1 ...................................................... 16

Fed. R. Civ. P. 12(b)(1) .............................................................................. 5

Fed. R. Civ. P. 12(b)(6) .............................................................................. 5

1    **I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

2            Plaintiff—who is not a student, faculty member, or staff member of the University

3    of California, Davis ("UCD" or the "University")—brings this action based on a single

4    interaction that he had in May 2024 at a long-since dispersed, pro-Palestinian protest

5    encampment on the University's campus.  Plaintiff states that he is Jewish and disabled,

6    and that he went to campus the day after the encampment formed to engage in counter-

7    protest activities. He asserts that he was unable to access certain campus walkways due

8    to the encampment and was struck by a protester.  Plaintiff brings claims based on this

9    incident against The Regents of the University of California ("The Regents") and various

10   University officials (referred to in this brief as the "Individual Defendants") alleging (i)

11   claims against the Individual Defendants under 42 U.S.C. § 1983 based on alleged

12   violations of Plaintiff's rights under the Equal Protection and Free Exercise Clauses, (ii) a

13   claim against all Defendants under Title VI of the Civil Rights Act of 1964, and (iii) a

14   claim against all Defendants under Title II of the Americans with Disabilities Act ("ADA").

15           To be clear, the University is dedicated to maintaining a campus environment that

16   supports and protects the welfare of all members of its community.  Plaintiff's First

17   Amended Complaint ("FAC"), however, should be dismissed because it suffers from

18   numerous legal deficiencies that cannot be redressed through amendment.

19           *First*, Plaintiff's Section 1983 claims—which are alleged only against the Individual

20   Defendants—must be dismissed for numerous reasons:

21   •   The alleged Equal Protection and Free Exercise Clause violations on which

22       Plaintiff's Section 1983 claims are premised require state action, which Plaintiff

23       does not allege.  Rather, Plaintiff alleges that private actors other than the

24       Individual Defendants engaged in the offending actions.

25   •   An Equal Protection Clause claim requires an allegation that the Individual

26       Defendants *intentionally* discriminated against the plaintiff based on (for

27       example) religion or national origin, which Plaintiff does not and cannot allege.

28

- Plaintiff's Free Exercise Clause claim likewise fails because he does not allege that the Individual Defendants substantially burdened his religious exercise, let alone that they did so through a non-neutral policy or accompanied by official expressions of hostility.  To the contrary, the FAC alleges that the University allowed counterprotests by students supporting Israel, which is why Plaintiff was on campus in the first place.

- To the extent they seek money damages, the Section 1983 claims against the Individual Defendants are barred by sovereign immunity (as to the official capacity claims) and qualified immunity (as to the personal capacity claims).

*Second*, Plaintiff's Title VI claim fails because non-students like Plaintiff, who were not participating in a University program or activity, lack standing to assert such a claim. Moreover, a Title VI claim requires a showing of intentional discrimination, and as explained, Plaintiff does not allege that Defendants intentionally discriminated against him.  And even if Plaintiff had standing to assert a Title VI claim, Plaintiff's allegation that he was subjected to a single isolated incident when interacting with individuals in the encampment falls far short of properly alleging "deliberate indifference" by the University.

*Third*, Plaintiff fails to state a claim under the ADA because he does not allege that he was denied access to any University facility or program.  As Plaintiff was informed by a University official, all University facilities or programs were at all times accessible, which is what the ADA requires.  Nor can Plaintiff seek money damages under the ADA.  Such damages are available only when the plaintiff puts the defendant on notice of a specific need for an accommodation and the defendant fails to respond. The FAC and correspondence incorporated therein make clear that Plaintiff can satisfy neither of these elements.

*Finally*, even if any of Plaintiff's claims could survive, his demand for punitive damages must be dismissed.  As noted, sovereign immunity bars the award of any damages, let alone punitive damages, in Section 1983 actions against officials acting in their official capacities.  Punitive damages are likewise not available under Title VI or the

1   ADA.  As to his personal-capacity Section 1983 claims, the FAC falls far short of the

2   applicable standard for obtaining punitive damages.

3       For all these reasons, and as explained in detail below, the FAC should be

4   dismissed.

5   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

6       On May 6, 2024, an encampment was established on UCD's campus.  Ex. A at

7   1.[1]  The encampment was located on the UCD Quad, which is a small portion of the

8   campus consisting of an open space surrounded by adjacent paths and a walkable road

9   and with an additional path that cuts through its center.  *See* Ex. B at 1-2 (campus map).

10      Following the encampment's formation, the University administration set out to

11  "[a]ctively engag[e] the students to mitigate any disruption of campus operations" and

12  "contact[ed] [the] participants about their rights and responsibilities under the law and

13  university policies."  Ex. A at 1.  In doing so, the University sought to accommodate

14  student expression while prioritizing the need to "keep[] the campus peaceful and

15  welcoming for people of all backgrounds."  Ex. C at 1.  The encampment ultimately was

16  peacefully disbanded on June 20 and there currently is no encampment at UCD.  Ex. D

17  at 1.

18      Plaintiff, who is a resident of Davis but is not affiliated with UCD, filed his initial

19  complaint in the present lawsuit a week and a half after the encampment began,

20  followed by the FAC on September 4, 2024.  Plaintiff's claims are premised on a single

21  interaction with the encampment on May 7, 2024, the day after it formed.  According to

22  the FAC, Plaintiff was on campus that day "to provide support to the counter dialogue

23

24  [1] In support of their Rule 12(b)(6) motion, Defendants rely on Exhibits A-F attached to the
    Declaration of Matthew R. Cowan.  Exhibits A-D may be properly considered in connection with

25  the 12(b)(6) motion because they are susceptible to judicial notice as documents "readily
    available on [a university's] public website."  *Saroya v. Univ. of Pac.*, 503 F. Supp. 3d 986, 994

26  (N.D. Cal. 2020) (taking judicial notice of university's course catalogs, financial agreement, and
    "periodic communications [the university] sent to students").  The Court may properly consider

27  Exhibits E and F because the FAC "incorporate[s] [them] by reference" and the documents are
    "integral" to the FAC because they "form[] the basis" of Plaintiff's claims.  *United States v.*

28  *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

1   against the Encampment and to support Jewish faculty and staff."  FAC ¶ 22.  Plaintiff

2   alleges that when he attempted to walk across the Quad, his path was blocked and he

3   was told to "go around."  *Id.*  Despite the availability of accessible walkways around the

4   perimeter of the Quad, Plaintiff alleges that he could not "circumvent the Encampment"

5   via the adjacent paths or grassy area because he has a disability "that requires him to

6   walk on even and stable ground, such as pavement," and not on grass or uneven

7   surfaces.  *Id.* ¶ 59.

8        The FAC asserts that when Plaintiff asked to speak to the students in charge of

9   the encampment, "he was accused of being a 'Zionist,' was told 'Zionists are not

10   welcome,' and to 'go away'" and "was struck twice in the face with the sharp end of an

11   umbrella."  *Id.* ¶ 22.  The FAC fails to specify with whom Plaintiff spoke or to identify any

12   individual who allegedly struck him.[2]  After this incident, Plaintiff allegedly sent an email

13   to UCD police chief Joseph Farrow and UCD Chancellor Gary May.  *Id.* ¶ 23.  The FAC

14   also describes Plaintiff's emails to UCD Chief Campus Counsel Mike Sweeney.  *Id.* ¶ 26.

15   Plaintiff acknowledges receiving a response from Wendi Delmendo, UCD's chief

16   compliance officer, *id.*, stating that there are "several accessible paths in the Quad area"

17   and offering "to point out nearby accessible routes" if Plaintiff let her know "what

18   University programs or locations [he was] trying to access."  Ex. E at 1.  Plaintiff does not

19   allege that he ever responded to this communication.

20        Based on these allegations, Plaintiff asserts four causes of action under (i) the

21   Equal Protection Clause, via 42 U.S.C. § 1983; (ii) the Free Exercise Clause, via 42

22   U.S.C. § 1983; (iii) Title VI of the Civil Rights Act of 1964; and (iv) Title II of the ADA.  He

23   names as defendants The Regents and the President of the University of California ("UC

24   President"), together with five UCD administrators—Gary S. May, Chancellor; Mary

25   Croughan, Provost and Executive Vice Chancellor; Renetta Garrison Tull, Vice

26

27   _____

    [2] Although the FAC mentions two individuals by name, Plaintiff does not allege that they
28   were affiliated with UCD and acknowledges they were not the individuals with whom he
    interacted.  *Id.* ¶ 24.

1    Chancellor for Diversity, Equity and Inclusion and the Co-Chair of the Next Generation

2    Campus Safety Task Force; Clare Shinnerl, Vice Chancellor for Finance, Operations,

3    and Administration; and Pablo Reguerin, Vice Chancellor for Student Affairs (all of whom

4    are sued in both their official and personal capacities).  FAC ¶¶ 5-11.[3]

5    **III.    LEGAL STANDARD**

6    Under Rule 12(b)(1), a complaint must be dismissed when the district court lacks

7    subject matter jurisdiction over the suit, including when a defendant is protected by

8    sovereign immunity, such that there is no judiciable case or controversy.  *Pistor v.*

9    *Garcia*, 791 F.3d 1104, 1110 (9th Cir. 2015); *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248,

10   1250 (9th Cir. 2006) ("Sovereign immunity is an important limitation on the subject matter

11   jurisdiction of federal courts").

12   Under Rule 12(b)(6), a complaint must be dismissed if it fails to allege "enough

13   facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

14   550 U.S. 544, 570 (2007).  "Factual allegations must be enough to raise a right to relief

15   above the speculative level."  *Id.* at 555.  While the Court must accept all well-pleaded

16   facts as true, it need not credit "[t]hreadbare recitals of the elements of a cause of action,

17   supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009),

18   nor "conclusory allegations which are contradicted by documents referred to in the

19   complaint," *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

20   **IV.    ARGUMENT**

21       **A.    PLAINTIFF'S SECTION 1983 CLAIMS, ASSERTED SOLELY AGAINST**
            **THE INDIVIDUAL DEFENDANTS, SHOULD BE DISMISSED.**
22

23   Plaintiff's Section 1983 claims—which are alleged only against the Individual

24   Defendants—must be dismissed because (i) the FAC fails to allege the state action

     required to bring such claims; (ii) the FAC also fails to allege other essential elements of
25
     those claims; and (iii) to the extent they seek money damages, liability is barred by
26

27   _____

28   [3] As noted above, *see supra* at 1, these administrators, together with the UC President,
     are referred to as the "Individual Defendants."

sovereign immunity (as to the official capacity claims) and qualified immunity (as to the personal capacity claims).

1.    **Plaintiffs' Section 1983 claims against the Individual Defendants fail because they do not allege state action.**

Plaintiff cannot establish a constitutional violation without pleading that his alleged harms were caused by state action.  *See, e.g.*, *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 226 (1963) ("the Free Exercise Clause clearly prohibits the use of state action to deny the rights of free exercise"); *Belgau v. Inslee*, 975 F.3d 940, 946 (9th Cir. 2020) ("[M]erely private conduct, however discriminatory or wrongful, falls outside the purview of the Fourteenth Amendment." (quotation omitted)). Plaintiff's claims, however, center not on actions by the Individual Defendants, but on those of private parties in the encampment who allegedly obstructed his access and struck him.  FAC ¶ 22.[4]  The FAC's solitary allegation that the mere presence and "collegial" behavior of Pablo Reguerin at the encampment somehow provided "encouragement" is insufficient to satisfy the pleading standard even as to Mr. Reguerin.  *See* FAC ¶ 11.  The allegation comes nowhere near asserting "such significant encouragement, either overt or covert, that the [action] must in law be deemed to be that of the State."  *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

The FAC's remaining allegations all impermissibly rely on the Individual Defendants' *inactions* rather than their *actions*.  *See, e.g.*, FAC ¶¶ 6-11 (repeatedly accusing the Individual Defendants of passively "allow[ing] [the encampment] to continue").  This is insufficient under the law to state a constitutional violation *by the State*.  *See Felber v. Yudof*, 851 F. Supp. 2d 1182, 1186 (N.D. Cal. 2011) (providing that

---

[4] The FAC's conclusory assertion that Defendants "established" the encampment, *see id.* ¶ 45, is contrary to common sense (President Drake, Chancellor May and the other Individual Defendants did not construct the camp) and also is belied by the FAC's more specific factual allegations making clear that the encampment was established by third parties—not by the Individual Defendants themselves.  *See id.* ¶¶ 16-17; *Jacobi v. Ergen*, 2015 WL 1442223, at *3 n.29 (D. Nev. Mar. 30, 2015) (court need not "credit conclusory allegations belied by more specific allegations in the complaint"); *Vahora v. Valley Diagnostic Lab'y Inc.*, 2020 WL 1061470, at *4 (E.D. Cal. Mar. 5, 2020) (same).

"state actors," including university administrators, "have no constitutional obligation to prevent private actors from interfering with the constitutional rights of others").

At bottom, Plaintiff has pleaded *no action* by the Individual Defendants that violated any constitutional standards.  That deficiency independently bars his Section 1983 claims against them.

### 2. Plaintiff fails to allege an Equal Protection or a Free Exercise Clause violation against the Individual Defendants.

Relatedly, Plaintiff's Section 1983 claims against the Individual Defendants must be dismissed because he fails to adequately allege the elements of those claims.

#### a. *Plaintiff fails to state an Equal Protection claim.*

To state an Equal Protection claim, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate ... based upon membership in a protected class."  *Shooter v. Arizona*, 4 F.4th 955, 960 (9th Cir. 2021) (quotation omitted).  In other words, a plaintiff "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent."  *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).  Discriminatory intent "implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (quotation omitted); *accord, e.g.*, *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status.").

Yet as explained above, *see supra* at 6, the FAC alleges no relevant action by the Individual Defendants whatsoever, let alone that any Individual Defendant intentionally took any action "because of" Plaintiff's status as a Jewish person.  *Feeney*, 442 U.S. at 279.  Plaintiff does not allege that Defendants were aware of his Jewish identity or intentionally singled him out for unfavorable treatment because of that identity.  On the contrary, the FAC expressly alleges that a counterprotest was permitted to take place on

1    the UCD campus.  *See* FAC ¶ 22 (describing "counter dialogue against the

2    Encampment" taking place on campus).

3          While Plaintiff conclusorily alleges selective nonenforcement of University

4    policies—such as the codes of conduct, campus organization rules, or time, place and

5    manner restrictions, *id.* ¶ 39—the Complaint does not explain how supposed

6    nonenforcement of University policies governing its relationship with its *students* pertains

7    to non-affiliates like Plaintiff.  Moreover, Plaintiff fails to point to any other group or

8    individual against which Defendants *did* enforce such policies, and he certainly does not

9    point to any Jewish person or group against which such policies were enforced in similar

10   circumstances.  As the Ninth Circuit explained in *Lee v. City of Los Angeles*, 250 F.3d

11   668 (9th Cir. 2001), an allegation of a "facially neutral polic[y] of inaction" does not state

12   an Equal Protection claim because it does not allege "that defendants' acts or omissions

13   were motivated by discriminatory animus toward … a protected class," *id.* at 687.

14                    b.        *Plaintiff fails to state a Free Exercise claim.*

15         Plaintiff's Free Exercise claim fails because the Individual Defendants did not

16   "burden[ ] his sincere religious practice pursuant to a policy that is not 'neutral' or

17   'generally applicable'" or that was accompanied by "official expressions of hostility."

18   *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 & n.1 (2022) (quotation omitted).

19         To state a Free Exercise claim, "the government action in question" must

20   "*substantially* burden[] the person's practice of her religion."  *Jones v. Williams*, 791 F.3d

21   1023, 1031 (9th Cir. 2015) (emphasis added).  "A substantial burden places more than

22   an inconvenience on religious exercise; it must have a tendency to coerce individuals

23   into acting contrary to their religious beliefs or exert substantial pressure on an adherent

24   to modify his behavior and to violate his beliefs." *Id.* at 1031-32 (alterations and

25   quotations omitted).

26         The FAC is utterly devoid of any allegation that any of the Individual Defendants

27   "substantially burdened" Plaintiff's religious practice, let alone that they did so via a non-

28   neutral policy or engaged in official expressions of hostility.  While Plaintiff asserts that

1  "Defendants have deprived Plaintiff of the right to express his Jewish identity freely, and

2  in particular his view of Zionism, through allowing the Encampment to thwart religious

3  dialog and rebuff any discussion that would recognize the possibility of … a Zionist

4  viewpoint, whether intrinsic to Jewish religious belief or otherwise," FAC ¶ 43, the FAC's

5  factual allegations directly undermine that assertion by explicitly acknowledging that

6  Plaintiff entered the campus to "provide support to *the counter dialogue against the*

7  *Encampment* and to support Jewish faculty and staff," *id*. ¶ 22 (emphasis added).

8  Plaintiff's allegations that individuals in the encampment refused to engage in discussion

9  with him or that he was "compelled" to "interact physically and emotionally" with the

10  encampment, *id*. ¶ 13, at most amount to a claim that he was exposed to "attitudes and

11  outlooks at odds" with his religion or that "offended" his religious beliefs, which is

12  insufficient to state a Free Exercise claim, *Cal. Parents for Equalization of Educ.*

13  *Materials v. Torlakson*, 267 F. Supp. 3d 1218, 1226-27 (N.D. Cal. 2017) (quoting *Grove*

14  *v. Mead Sch. Dist*., 753 F.2d 1528, 1543 (9th Cir. 1985) (Canby, J., concurring)), *aff'd*,

15  973 F.3d 1010 (9th Cir. 2020).

16
                        3.       **Plaintiff's official-capacity Section 1983 claims against the**
                                 **Individual Defendants are barred by sovereign immunity to the**
17                               **extent Plaintiff seeks monetary damages.**

18          Plaintiff cannot assert a Section 1983 claim against the Individual Defendants in

19  their official capacities because such claims are barred by sovereign immunity. The

20  Eleventh Amendment bars Section 1983 suits against "States or governmental entities

21  that are considered 'arms of the State.'"  *Will v. Mich. Dep't of State Police*, 491 U.S. 58,

22  70 (1989).  It is well-established that The Regents and its officials are an "arm of the

23  state" and so are immune from suit under Section 1983.  *See, e.g.*, *Feied v. Regents of*

24  *Univ. of Cal*., 188 F. App'x 559, 561 (9th Cir. 2006) (collecting cases); *Regents of Univ.*

25  *of Cal. v. Doe*, 519 U.S. 425, 429-31 (1997); *Will*, 491 U.S. at 71 ("[A] suit against a state

26  official in his or her official capacity" is "no different from a suit against the State itself"

27  because it "is not a suit against the official but rather is a suit against the official's

28  office[.]"); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) ("[S]tate officials sued in

their official capacities, including university officials, are not 'persons' within the meaning of § 1983 and are therefore generally entitled to Eleventh Amendment immunity.").  That rule forecloses Plaintiff's official-capacity Section 1983 claims for monetary damages.

4. **Plaintiff's individual-capacity Section 1983 claims against the Individual Defendants are barred by qualified immunity to the extent Plaintiff seeks monetary damages.**

The Individual Defendants are entitled to qualified immunity from Plaintiff's Section 1983 claims to the extent they are asserted in their personal capacities. Qualified immunity protects "government officials performing discretionary functions from liability for civil damages" so long as they are not "plainly incompetent" and do not "knowingly violate the law."  *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 886 (9th Cir. 2022) (quotation omitted); *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  To overcome qualified immunity, a plaintiff must therefore plausibly allege that (i) the government official violated a constitutional right and (ii) the right was clearly established at the time of the conduct at issue.  *See Sabra*, 44 F.4th at 886.  Because qualified immunity is a defense from suit and not merely a defense from trial, it should be resolved "at the earliest possible stage in litigation."  *Id.* at 892 (quotation omitted).

For the reasons explained above, Plaintiff does not plausibly allege *any* constitutional violations, let alone violations of a "clearly established" right.  However, even if Plaintiff could allege a constitutional violation against the Individual Defendants, to overcome qualified immunity, Plaintiff had to plausibly allege that "every reasonable official would have understood" that their response to the encampment violated the law "at the time" of the response.  *Sampson v. Cnty. of Los Angeles by and through Los Angeles Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1018-19 (9th Cir. 2020) (quoting *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (per curiam)); *see also id.* at 19 ("[W]e ask 'whether the state of the law at the time of the officials' conduct gave them fair warning that their alleged conduct was unconstitutional.'" (alterations adopted) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 729 (9th Cir. 2022) ("[T]he right must be defined at a more specific level tied

1    to the factual and legal context of a given case.").  This "demanding standard" requires

2    that existing precedent "must have placed" the constitutional question "beyond debate."

3    *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quotation omitted).

4              Plaintiff cannot make that showing.  His claims stem from a single interaction with

5    the encampment just one day after its formation.  Obviously, it was in no way "beyond

6    debate" at that time—nor since—that the Individual Defendants' response to the

7    encampment would violate the constitutional rights of an individual who is not even a

8    student or employee of the University.  The University's decisionmaking arose in exactly

9    the context where qualified immunity applies most forcefully: situations that are "tense,

10   uncertain, and rapidly evolving."  *Thompson v. Rahr*, 885 F.3d 582, 590 (9th Cir. 2018)

11   (quotation omitted); *see also Meinecke v. City of Seattle*, 99 F.4th 514, 523 (9th Cir.

12   2024) (expressing "sensitiv[ity] to the logical difficulties of handling" a "dynamic situation"

13   like a heated protest).  In these circumstances, the Individual Defendants are entitled to

14   qualified immunity, requiring dismissal of the Section 1983 claims for money damages

15   against them in their personal capacities.

16        **B.     PLAINTIFF'S TITLE VI CLAIM SHOULD BE DISMISSED FOR LACK OF
                   STATUTORY STANDING AND FAILURE TO STATE A CLAIM.**

17             Plaintiff's claim under Title VI, *see* 42 U.S.C. § 2000d, should likewise be

18   dismissed.[5]  Plaintiff's effort to plead a Title VI violation fails at the threshold because

19   Plaintiff, who is not a student at UCD, lacks standing to assert a Title VI claim against the

20   University.  Even if he could overcome that fatal flaw, Plaintiff's allegations fail to

21   _____

22   [5] While Plaintiff asserts this claim against all Defendants, a Title VI claim cannot be
     asserted against an individual defendant in his or her personal capacity.  *See Braunstein*

23   *v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1183 (9th Cir. 2012) ("§ 2000d ... does not
     provide for monetary relief against individual defendants"); *Hariri v. Portland State Univ.*,

24   2016 WL 2595476, at *8 (D. Or. May 5, 2016) ("[A]ll courts to have addressed the
     question have found that there is no private right of action whatsoever under Title VI

25   against individual employees or agents of entities receiving federal funding, including
     actions for purely injunctive relief").  Nor can such a claim be asserted against an

26   individual in his or her official capacity.  *See Hariri*, 2016 WL 2595476, at *8.  Even
     assuming that an official-capacity Title VI claim is permissible, that claim should in any

27   event be dismissed as redundant of the claim against The Regents.  *See, e.g.*, *Barry v.
     Yosemite Cmty. Coll. Dist.*, 2017 WL 896307, at *6 (E.D. Cal. Mar. 7, 2017).

28

adequately state a Title VI claim.

### 1. As a non-student, Plaintiff lacks standing to assert a Title VI claim.

Courts in this Circuit have repeatedly recognized that Title VI claims against universities cannot be asserted by non-students because they are not the intended beneficiaries of the federal funding at issue.  *See Epileptic Found. v. City & Cnty. of Maui*, 300 F. Supp. 2d 1003, 1011, 1012 n.27 (D. Haw. 2003) (explaining that, under binding Ninth Circuit precedent, the "intended beneficiary" requirement is the applicable lens for determining the statute's zone of interests). Title VI prohibits excluding persons "from participation in" or denying "the benefits of  . . . any program or activity receiving Federal financial assistance."   42 U.S.C. § 2000d.  Thus, "to prevail on a claim under Title VI, a plaintiff must establish, among other things, that he was an intended beneficiary of the program. . . . ***The intended beneficiaries of federally funded public school programs are the students***"—not third parties.  *Smith v. Cal. Bd. of Educ.*, 2014 WL 5846990, at *4 (C.D. Cal. Nov. 10, 2014) (emphasis added).  For that reason, a non-student "Plaintiff may not bring a claim under Title VI, alleging that the school discriminated against him because he is not an intended beneficiary of public schooling." *Id.*; *accord, e.g.*, *Posey v. S.F. Unified Sch. Dist.*, 2023 WL 8420895, at *2 (N.D. Cal. Dec. 4, 2023) (dismissing Title VI claim without leave to amend because "[a]s a threshold matter," non-student plaintiffs who were "not the intended beneficiaries of public schooling" could not assert a Title VI claim).

It is undisputed that Plaintiff is not a UCD student, FAC ¶ 21, and thus is "not an intended beneficiary of public schooling."  *Smith*, 2014 WL 5846990, at *4.  His Title VI claim must accordingly be dismissed.

### 2. Plaintiff also fails to allege the elements of a Title VI claim.

Even assuming standing, Title VI prohibits only "intentional discrimination," *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001), and for the reasons discussed above, *see supra* at 7-8, Plaintiff does not allege intentional discrimination by Defendants.  *See*

1    *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181,

2    252 n.4 (2023) ("Title VI is coextensive with the Equal Protection Clause.").

3        Plaintiff also cannot establish a Title VI violation based on the University's

4    response—or alleged lack of response—to the conduct of encampment participants that

5    Plaintiff says caused him harm.  A plaintiff can allege a Title VI violation based on a

6    university's failure to prevent discrimination by third parties only if he can show that

7    Defendants' "deliberate indifference effectively caused the discrimination."  *Davis v.*

8    *Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642-43 (1999) (quotation and alteration

9    omitted).[6]  To satisfy the *Davis* standard, Plaintiff must plead that he experienced

10   "severe" and discriminatory harassment, over which the school had "substantial control"

11   and of which it had "actual knowledge," and to which it responded with "deliberate

12   indifference."  *Id.* at 642-43, 645.  It is not enough, as the Ninth Circuit has explained, to

13   show that a school's response was "negligent, lazy, or careless."  *Karasek v. Regents of*

14   *Univ. of Cal.*, 956 F.3d 1093, 1105 (9th Cir. 2020) (quotation omitted).  Rather, Plaintiffs

15   must show that a "school's 'response to the harassment or lack thereof [was] clearly

16   unreasonable in light of the known circumstances.'" *Id.* (quoting *Davis*, 526 U.S. at 648).

17   This is a "high bar," *Csutoras v. Paradise High Sch.*, 12 F.4th 960, 966 (9th Cir. 2021)—

18   one that Plaintiff's sparse FAC falls far short of satisfying for several reasons.

19        First, the FAC does not allege that Defendants' response to the conduct of

20   participants in the nascent encampment just one day after its establishment was "clearly

21   unreasonable" in light of the "flexibility" that school administrators are afforded under

22   *Davis.  See* 526 U.S. at 648.  As the U.S. District Court for the District of Massachusetts

23   recently explained in dismissing a Title VI claim asserted against MIT in connection with

24   an encampment on its campus, allegations that a university "could have … reacted to

25   the protests differently (and with more positive results)" do not state a clam of deliberate

26

27   ––––––––––––––––––––

[6] Title IX case law applies with equal force in the Title VI context because the Supreme Court and the Ninth Circuit have "interpreted Title IX consistently with Title VI."  *United*

28   *States v. County of Maricopa*, 889 F.3d 648, 652 n.2 (9th Cir. 2018) (quoting *Barnes v. Gorman*, 536 U.S. 181, 185 (2002)).

1 indifference because the law does not demand that a university meet "an outburst of

2 ugliness on its campus" with a "faultless response."  *StandWithUs Ctr. for Legal Just. v.*

3 *Mass. Inst. of Tech.*, 2024 WL 3596916, at *5 (D. Mass. July 30, 2024).  Here, too, the

4 FAC alleges nothing approaching a "clearly unreasonable" response, foreclosing

5 Plaintiff's Title VI claim.

6      *Second*, the FAC fails to allege "circumstances where the [University] 'exercises

7 substantial control over both the harasser and the context in which the known

8 harassment occurs.'"  *Brown v. Arizona*, 82 F.4th 863, 875 (9th Cir. 2023) (quoting

9 *Davis*, 526 U.S. at 645).  The FAC itself alleges that "a significant number of the

10 individuals who participated in the Encampment were/are not UC Davis students," FAC

11 ¶ 16, and does not allege that the protesters who confronted Plaintiff are affiliated with

12 the University.

13      *Third*, Plaintiff fails to show that the challenged conduct was "so severe,

14 pervasive, and objectively offensive" and "so undermines and detracts from the victims'

15 educational experience, that the victim-students are effectively denied equal access to

16 an institution's resources and opportunities."  *Davis*, 526 U.S. at 651.  As explained

17 above, *see supra* at 12, Plaintiff, as a non-student, could never make this showing

18 because he is not entitled to an "educational experience" at the University.  Moreover,

19 Plaintiff alleges that he experienced only a "single instance" of alleged harassment at the

20 encampment on May 7, which is facially insufficient.  *Davis*, 526 U.S. at 652-53 (noting

21 the untenable "amount of litigation that would be invited by entertaining claims of official

22 indifference to a single instance" of harassment given "the inevitability of student

23 misconduct" and "the practical realities of responding to student behavior"); *see also*

24 *Mosavi v. Mt. San Antonio Coll.*, 805 F. App'x 502, 504 (9th Cir. 2020) ("isolated

25 incident" did "constitute the 'severe' and 'pervasive' harassment required to prevail under

26 Title IX").

27      Plaintiff's Title VI claim accordingly must be dismissed.

28

**C.    PLAINTIFF'S ADA CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

To state a claim under Title II of the ADA, a plaintiff must show that "(1) [he] is an individual with a disability; (2) [he] is otherwise qualified to participate in or receive the benefit of a public entity's services, programs, or activities; (3) [he] was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of [his] disability." *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 985 (9th Cir. 2014).  A Title II claim can be premised on a public entity's failure to fulfill its "'duty to accommodate' disabled persons." *Cohen v. City of Culver City*, 754 F.3d 690, 700 (9th Cir. 2014).  To assert a claim for money damages, a plaintiff must also "prove intentional discrimination on the part of the defendant." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). Plaintiff has failed to plead either (i) exclusion from a service, program, or activity of the University, or (ii) the intentional discrimination necessary to recover damages.[7]

1.    **Plaintiff has failed to plead that he was excluded from participation in or denied the benefits of the University's services, programs, or activities.**

Plaintiff has identified no service, program, or activity of the University from which he was supposedly excluded because of the encampment's existence and its alleged blocking of a single path across the UCD Quad.[8]  While Plaintiff generally asserts that he

---

[7] Plaintiff asserts his claim under Title II of the ADA against all Defendants.  However, just like Title VI, *see supra* note 5, that claim cannot be asserted against the Individual Defendants in their personal capacities.  *See Martin v. Almeida*, 2007 WL 582430, at *1 (E.D. Cal. Feb. 14, 2007) ("Individual defendants may not be sued in their individual capacities under Title II of the ADA"); *accord, e.g.*, *Becker v. Oregon*, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001).  The ADA claim against the Individual Defendants in their official capacities, meanwhile, should be dismissed as redundant of the claim against the Regents.  *See Welk v. Cal. Dep't of Corr.*, 2019 WL 4745272, at *5 (E.D. Cal. Sept. 30, 2019), *rep. & recommendation adopted*, 2020 WL 568888 (E.D. Cal. Feb. 5, 2020).

[8] Nor can Plaintiff rely on the single allegedly obstructed path or sidewalk as *itself* constituting the "service, program, or activity" from which he was ostensibly excluded. *See Daubert*, 760 F.3d at 987 ("whether a public function constitutes a public program under Title II turns" on "whether it is a normal function of a governmental entity"

is "regularly" present on UCD's campus to exercise or attend meetings and events, *see* FAC ¶ 21, he does not point to any specific activity or program that he was unable to participate in because of his purported inability to use a particular path through the Quad on that occasion.[9]

Nor can Plaintiff plausibly allege that the University's existing accommodations fell below the standard the ADA requires.  ADA regulations generally require "that each 'program' offered … when viewed in its entirety, be 'readily accessible to and usable by individuals with disabilities.'"  *Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164, 1174 (9th Cir. 2017) (quoting 28 C.F.R. § 35.150(a)); *see also* 2010 ADA Accessibility Guidelines for Buildings and Facilities ("2010 ADAAG"), 36 C.F.R. pt.1191, Ex. B, § 206.2.1 (requiring, for facilities altered after a specified date, that "[a]t least one accessible route shall be provided [from] ... public streets and sidewalks ... to the accessible building or facility entrance they serve").

The University was at all times well within the bounds of the ADA.  As Ms. Delmendo informed Plaintiff, *see* Ex. E at 1, the campus is replete with accessible paths available in the Quad area, and Defendants offered to point out accessible routes to accommodate Plaintiff's needs, but Plaintiff declined to engage.  Given the available alternative accessible routes, and the FAC's failure to identify any relevant facilities, service, or program from which Plaintiff was excluded, the ADA claim should be dismissed.

### 2. Plaintiff's claim for money damages fails because the FAC does not adequately allege deliberate indifference.

"To recover monetary damages under Title II of the ADA," a plaintiff must

---

(quotation omitted)); *Twede v. Univ. of Wash.*, 309 F. Supp. 3d 886, 903 (W.D. Wash. 2018) (facilities that were "'merely incidental' to [university's] public programs" did not qualify as a predicate service, program, or activity for purposes of an ADA claim against the university, even if the same category of facilities would have been within the "normal function of a city" as opposed to a university).

[9] That was so notwithstanding Defendants' explicit request for that information for purposes of helping Plaintiff identify a suitable route through the campus among the many accessible paths that surround the Quad area.  *See* Ex. E at 1.

additionally prove "intentional discrimination" under a "deliberate indifference" standard, which requires both (1) "knowledge that a harm to a federally protected right is substantially likely," meaning that the public entity has been given "some form of notice … and the opportunity to conform to [statutory] dictates" and (2) "a failure to act upon that [] likelihood."  *Duvall*, 260 F.3d at 1138-39 (quotation omitted).  In turn, to show notice, the plaintiff must demonstrate that he "alerted the public entity to his need for accommodation" by "identify[ing] 'specific reasonable' and 'necessary' accommodations.'"  *Id.* at 1139 (quoting *Memmer v. Marin Cnty. Cts.*, 169 F.3d 630, 633 (9th Cir. 1999)).

The FAC, together with the relevant correspondence, confirm that Plaintiff can satisfy neither element.  Plaintiff emailed Mr. Sweeney after the counter-protest stating only that he was a "disabled, US Veteran" and that the encampment had blocked one footpath through the Quad.  Ex. E at 1-2; *see also* Ex. F at 4 (Plaintiff's report to the U.S. Department of Justice Civil Rights Division, a copy of which was attached to the email to Mr. Sweeney, which sets forth the same information).  That correspondence failed to identify the nature of Plaintiff's disability or request any "'specific reasonable' and 'necessary' accommodations.'"  *Duvall*, 260 F.3d at 1139 (quoting *Memmer*, 169 F.3d at 633). Moreover, as explained, *see supra* at 4, 16, Ms. Delmendo responded to Plaintiff's subsequent inquiry by explaining that there were several accessible paths in the Quad area and offering to assist Plaintiff in identifying paths that would suit his needs.  Plaintiff never responded to that offer of accommodation.

For these reasons, Plaintiff cannot recover money damages.

**D.    PLAINTIFF'S DEMAND FOR PUNITIVE DAMAGES SHOULD BE DISMISSED.**

Finally, this Court should dismiss Plaintiff's demand for punitive damages as to all claims.  Such damages are not available under Title VI or the ADA.  *Barnes*, 536 U.S. at 189.  Punitive damages in Section 1983 suits are likewise "not available against government entities or officials acting in their official capacities."  *Jones v. County of*

1  *Tulare*, 2023 WL 4086886, at *11 (E.D. Cal. June 20, 2023); *accord, e.g.*, *Wells v. Bd. of*

2  *Trs. of Cal. State Univ.*, 393 F. Supp. 2d 990, 998 (N.D. Cal. 2005).  Finally, to the extent

3  Plaintiff seeks punitive damages for his Section 1983 claims against the Individual

4  Defendants in their personal capacities, for the reasons set forth above, the FAC falls far

5  short of pleading the "malicious, wanton, or oppressive acts or omissions" required to

6  support such an award.  *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005).

7      Punitive damages are accordingly "precluded as a matter of law," such that

8  Plaintiff's demand should be dismissed under Rule 12(b)(6).  *Whittlestone, Inc. v. Handi-*

9  *Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).

10  **V.   CONCLUSION**

11      For the reasons stated, Defendants respectfully request that the Court grant their

12  Motion to Dismiss Plaintiff's FAC in its entirety, without leave to amend.

13

14      Dated: October 17, 2024

15                                    O'MELVENY & MYERS LLP
       By:    */s/ Matthew R. Cowan*
16              Matthew R. Cowan

17      *Attorney for Defendants*

18

19

20

21

22

23

24

25

26

27

28