UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JONATHAN GROVEMAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA, MICHAEL V. DRAKE, GARY S. MAY, MARY CROUGHAN, RENETTA GARRISON TULL, CLARE SHINNERL, PABLO REGUERIN, AND DOES 1-10,<br><br>　　　　Defendants. | No. 2:24-cv-01421 WBS AC<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT |

----oo0oo----

　　　　Plaintiff Jonathan Groveman brought this action against defendants Regents of the University of California, Michael Drake, Gary May, Mary Croughan, Renetta Garrison Tull, Clare Shinnerl, and Pablo Reguerin, alleging violation of the First and Fourteenth Amendments under 42 U.S.C. § 1983; violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.; and violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.  (First Am. Compl. ("FAC")

1

(Docket No. 24).)  Defendants move to dismiss the entire action. (Docket No. 32.)

I.  Factual Background

Plaintiff is a resident of Davis, California.  (FAC ¶ 4.)  Defendant Drake is the President of the University of California system.  (Id. ¶ 6.)  The remaining individual defendants are associated with University of California, Davis ("UC Davis").  Specifically, May is the Chancellor; Croughan is the Provost and Executive Vice Chancellor; Tull is the Vice Chancellor for Diversity, Equity and Inclusion and Co-Chair of the Next Generation Campus Safety Task Force; Shinnerl is the Vice Chancellor for Finance, Operations & Administration; and Reguerin is the Vice Chancellor for Student Affairs.  (See id. ¶¶ 7-11.)

This action concerns a protest encampment set up on the UC Davis campus by an organization called the Davis Popular University for the Liberation of Palestine ("PULP"), which is not a registered student organization at the university.  (See id. ¶¶ 7, 32.)  The PULP encampment was established by May 7, 2024 in the UC Davis quad.  (See id. ¶ 12.)  The complaint alleges that the encampment was "comprised of individuals who are vehemently opposed to the existence of the State of Israel" and are supportive of the "desire to extinguish . . . Israelis and Jews wherever they may live in the world."  (See id. ¶¶ 14-15.)

On May 7, 2024, plaintiff -- who is Jewish and identifies as a Zionist -- was "on campus . . . to provide support to the counter dialogue against the Encampment and to support Jewish faculty and staff."  (See id. ¶¶ 22, 38.)  He

2

attempted to walk from the north side of the central path through the quad, which was blocked by the encampment, to the south side, but was prevented from entering the encampment and told to "go around." (Id.)  He explained that he has a mobility disability and needed to walk on the concrete central path and was again refused. (Id.)  He "asked to speak to the student in charge of the [e]ncampment, at which point he was accused of being a 'Zionist,' was told 'Zionists are not welcome,' and to 'go away.'" (Id.)  He was "struck twice in the face with the sharp end of an umbrella." (Id.)

The encampment was dismantled on or about June 20, 2024 following negotiations with UC Davis officials. (See id. ¶ 19.)

II.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal when a complaint fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).  "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  The inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the complaint has alleged "sufficient facts . . . to support a cognizable legal theory," id., and thereby stated "a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Courts are not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see Twombly, 550 U.S. at 555.

3

III. Discussion

    A.   Section 1983

        1.   Equal Protection

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Shooter v. Arizona, 4 F.4th 955, 960 (9th Cir. 2021).

Plaintiff alleges that the encampment participants excluded him on the basis of his Jewish identity using physical force and "racially and ethnically charged invectives." (See FAC ¶ 17.) He attempts to hold defendants responsible for the actions of the encampment participants by alleging that they "allow[ed] [the encampment] to continue" despite the encampment violating university policies concerning camping and permitting. (See id. ¶¶ 6-12.) He also alleges that May "negotiated with" PULP concerning the location of the encampment (id. ¶ 6); that Croughan's office "field[ed] and address[ed] concerns arising out of the recent Israel-Palestine conflict" and Shinnerl was generally responsible for safety on campus (id. ¶¶ 8, 10); that Tull "believes that anti-Zionism has nothing to do with antisemitism and that expression thereof is inherently not problematic under the First Amendment, and that expressing concern about the [e]ncampment is inherently Islamophobic" (id. ¶ 9); and that Reguerin was "collegial" to those in the encampment and accused counter-protestors of exacerbating tensions on campus (id. ¶ 11).

4

1     Plaintiff's allegations fall short of establishing even
2 a causal connection between defendants' actions and plaintiff's
3 exclusion from the encampment, let alone that defendants acted
4 with discriminatory intent.  See Mandel v. Bd. of Trs. of Cal.
5 State Univ., No. 17-cv-03511 WHO, 2018 WL 5458739, at *17 (N.D.
6 Cal. Oct. 29, 2018) (allegations that defendants, inter alia,
7 failed to prevent exclusion of Jewish student group by third
8 parties or held anti-Zionist views were insufficient to establish
9 intentional discrimination).  Nor does plaintiff allege any facts
10 suggesting that the university treated Jewish individuals
11 differently than the encampment participants; there is no
12 indication that Jewish individuals sought to establish an
13 encampment, or that if they had, the university would have
14 rebuffed them or prevented them from engaging in comparable
15 treatment of pro-Palestinian protestors.  See Gallinger v.
16 Becerra, 898 F.3d 1012, 1016 (9th Cir. 2018) (Equal Protection
17 analysis considers whether similarly situated individuals were
18 treated differently).  Accordingly, plaintiff's Equal Protection
19 claim will be dismissed.
20     2.   Free Exercise
21     The Free Exercise Clause of the First Amendment,
22 applicable to the states through the Fourteenth Amendment,
23 provides that "Congress shall make no law . . . prohibiting the
24 free exercise" of religion.  Under the Free Exercise Clause, the
25 government may not "burden[] religious practice" by providing "a
26 mechanism for individualized exemptions" in a purportedly neutral
27 policy, "treat[ing] comparable secular activity more favorably
28 than religious exercise," or "act[ing] in a manner hostile to

5

religious beliefs." Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ., 82 F.4th 664, 686, 690 (9th Cir. 2023) (cleaned up).

Plaintiff alleges that defendants "deprived [him] of the right to express his Jewish identity freely" by "allowing the encampment to thwart religious dialog[ue]" in violation of the Free Exercise Clause of the First Amendment. (FAC ¶ 43.) This claim relies upon the allegations discussed above and fails for similar reasons. It is not possible to draw a plausible inference that defendants' actions (or inactions) had the effect of favoring or disfavoring any religion or burdening plaintiff's religious exercise. To the contrary, the complaint states that a "counter-dialogue" in response to the encampment took place on campus, and there is no indication defendants interfered with plaintiff's ability to express his views or exercise his religion in that setting. (See id. ¶ 22.)

While individuals associated with PULP purportedly excluded plaintiff from the encampment and refused to engage in religious dialogue, the causal connection between this alleged injury and defendants' actions in allowing the encampment or expressing their views is too attenuated to establish a Free Exercise violation. See Apache Stronghold v. United States, 101 F.4th 1036, 1111 (9th Cir. 2024) (Vandyke, J., concurring) ("[W]hen the government acts (or fails to act), not all of its actions (or inactions) that may have some incidental effect on an individual's religious exercise are deemed to 'burden' that person's religious exercise within the meaning of our guarantees of religious freedom."); Mandel, 2018 WL 5458739, at *14 (Jewish

university students failed to state a claim under the First Amendment in connection with disruption of student organization's event where alleged injury "was caused by the protestors" and there were no facts indicating defendants "fostered the conduct of the protesters"). Accordingly, plaintiff's Free Exercise claim will be dismissed.

### 3. Qualified Immunity

Even if the facts alleged established constitutional violations, plaintiff has not pled that defendants violated clearly established law. Under the circumstances facing the defendants, it would not have been "clear" to "every reasonable official . . . that what he is doing is unlawful." See Dist. of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (quotation marks omitted); see also Keates v. Koile, 883 F.3d 1228, 1235 (9th Cir. 2018) (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015)) (At the pleadings stage, defendants are entitled to qualified immunity unless plaintiff sufficiently pleads violation of a "clearly established constitutional right[] of which a reasonable officer would be aware 'in light of the specific context of the case.'"). Accordingly, even if the court were to conclude that plaintiff stated First and Fourteenth Amendment claims, defendants would be entitled to qualified immunity. See Saucier v. Katz, 533 U.S. 194, 202 (2001).

### B. Title VI

Title VI provides that no person shall "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" on the basis of race, color, or national

origin.  42 U.S.C. § 2000d.  Plaintiff alleges that UC Davis receives federal financial assistance and is therefore subject to Title VI.  (See FAC ¶ 48.)

Defendants argue that plaintiff lacks standing to bring a Title VI claim.  Cases addressing statutory standing under both Title VI and Title IX are relevant here, as courts have interpreted the two statutes in the same manner owing to their nearly identical language and function.  See Barnes v. Gorman, 536 U.S. 181, 185 (2002) ("[T]he [Supreme] Court has interpreted Title IX consistently with Title VI."); Schmitt v. Kaiser Found. Health Plan of Wash., 965 F.3d 945, 953 (9th Cir. 2020) (Because "Title VI served as the model for Title IX," courts "interpret the [two] statutes similarly.").

While the Ninth Circuit has not squarely addressed statutory standing under Titles VI and IX, several other circuits have done so.  For example, in Carnell Construction Corp. v. Danville Redevelopment & Housing Authority, the Fourth Circuit noted that based on the language of Title VI, "the determinative inquiry" in analyzing standing under the statute is whether the plaintiff "was either participating or seeking to participate in a federally funded activity, or was the intended beneficiary of those federal funds."  745 F.3d 703, 715-16 (4th Cir. 2014).  The Seventh Circuit has similarly held that "in order to bring a private action under Title VI[,] the plaintiff must be the intended beneficiary of, an applicant for, or a participant in a federally funded program."  See Doe on Behalf of Doe v. St. Joseph's Hosp. of Fort Wayne, 788 F.2d 411, 418–19 (7th Cir. 1986).

　　　　　Several California district courts have also held that a plaintiff must be the beneficiary of federal funds or participating in a federally-funded program to establish standing under Titles VI and IX.  See, e.g., Donaghe v. Sherman Heights Elementary, No. 24-cv-0359 MMA DDL, 2024 WL 3883510, at *4 (S.D. Cal. Aug. 20, 2024) ("Although . . . Title IX can apply to non-students, courts have done so only in the context of a plaintiff who participated in or intended to participate in an educational program or activity receiving Federal assistance.") (cleaned up); Concerned Jewish Parents & Tchrs. of Los Angeles v. Liberated Ethnic Stud. Model Curriculum Consortium, No. 22-cv-3243 FMO EX, 2024 WL 5274857, at *19 (C.D. Cal. Nov. 30, 2024) ("'plaintiffs' Title VI claim fails because they 'are not the intended beneficiaries of public schooling'") (quoting Posey v. San Francisco United Sch. Dist., No. 23-cv-02626 JSC, 2023 WL 8420895, at *2 (N.D. Cal. Dec. 4, 2023)); Lopez v. Regents of Univ. of Cal., 5 F. Supp. 3d 1106, 1114 (N.D. Cal. 2013) ("in general, non-students such as parents do not have a personal claim under Title IX"); see also Smith v. Cal. Bd. of Educ., No. 13-cv-5395 FMO PJW, 2014 WL 5846990, at *4 (C.D. Cal. Nov. 10, 2014) (noting that although Fobbs v. Holy Cross Health Sys. Corp., 29 F.3d 1439, 1447 (9th Cir. 1994) held that a plaintiff was not required to plead he is the intended beneficiary of federal funds under Title VI, that case is no longer persuasive following Twombly's establishment of the current pleading standard).

　　　　　Here, plaintiff has failed to plead sufficient facts to establish that he has standing to bring a claim under Title VI.

The complaint states that he is "on the UC Davis campus regularly" to exercise and to attend "meetings and events" related to his work and his daughter's participation in the Davis High School orchestra, as well as unspecified "campus events." (FAC ¶ 21.)  The complaint does not indicate what "work" he is involved in that brings him to campus.  On the day in question, plaintiff "was on campus . . . to provide support to the counter dialogue against the Encampment and to support Jewish faculty and staff."  (Id. ¶ 22.)  Based on the allegations of the complaint, plaintiff is entirely unaffiliated with UC Davis and is not involved with any university program or activity receiving federal funding.  Indeed, the organization that established the encampment is not itself a registered student organization at UC Davis.  (Id. ¶ 32.)  Plaintiff cannot be considered a participant in a federally funded program merely by setting foot on the campus to participate in a political protest with no formal connection to the university.  Accordingly, plaintiff lacks standing to bring a claim under Title VI, and his claim under that statute will be dismissed.

    C.    ADA

"Title II of the ADA, the title applicable to public services, provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'"  K.M. ex rel. Bright v. Tustin Unified Sch. Dist., 725 F.3d 1088, 1096 (9th Cir. 2013) (quoting 42 U.S.C. § 12132).

10

Plaintiff alleges his rights under the ADA were violated because he has a mobility disability and was unable to use the central path through the quad blocked by the encampment to get from the north side of the quad to the south side. (See FAC ¶ 22, 59.) The main path through the quad is asphalt or concrete, which is the type of paving plaintiff requires based on his disability. (Id.) Plaintiff alleges that he was unable to safely walk on the grass surrounding the encampment. (See id. ¶ 59.) The complaint also states that "many of the paths surrounding and accessing UC Davis" are made of decomposed granite material that is not safe for him to walk on. (Id.)

On May 10 and 14, plaintiff wrote to UC Davis Chief Counsel Mike Sweeney concerning the inaccessible path through the quad. (Id. ¶ 26.) On May 17, UC Davis' ADA Coordinator Wendi Delmendo sent a response informing plaintiff that he would need to use a different path. (Id.) A copy of the email -- which is incorporated into the complaint by reference[1] -- shows that Ms. Delmendo informed plaintiff that there were other accessible paths to get to various campus locations and offered to assist plaintiff in locating an accessible path. (See Docket No. 32-7.) The complaint does not suggest that plaintiff attempted to accept the offered assistance, nor does it allege that there was not, in fact, an accessible path that would have allowed him to reach his desired destination; rather, the complaint merely states that

---

[1] Because the email is incorporated into the complaint by reference (see FAC ¶ 26) and plaintiff does not dispute the accuracy of the email provided by defendants, the court is permitted to consider the content of the email. See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018).

plaintiff cannot walk on grass or decomposed granite and wished to take the paved path through the center of the quad.  (See FAC ¶ 59.)

The ADA does not always "require an accommodation that an individual requests or prefers; instead, the ADA requires only a reasonable accommodation."  Chew v. Legislature of Idaho, 512 F. Supp. 3d 1124, 1129 (D. Idaho 2021) (citing Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002)).  Assuming plaintiff's allegations are sufficient to establish that he is disabled within the meaning of the ADA, plaintiff has failed to plead that he was denied a reasonable accommodation or that he was unable to reach his desired destination.  That a single path preferred by plaintiff was not accessible does not plead a violation of Title II of the ADA.  See Parker v. Universidad de Puerto Rico, 225 F.3d 1, 7 (1st Cir. 2000) (university was "not required to make every passageway in and out of the [site] accessible," but was required to "provide at least one route that a person in a wheelchair can use to reach the [site] safely") (cited with approval in Cohen v. City of Culver City, 754 F.3d 690, 698 (9th Cir. 2014)).  Accordingly, the ADA claim will be dismissed.

The court cannot envision any set of facts consistent with the allegations of the complaint that would cure the defects identified above.  The court therefore will not grant leave to amend the complaint.  See Missouri ex rel. Koster v. Harris, 847 F.3d 646, 656 (9th Cir. 2017).

IT IS THEREFORE ORDERED that defendants' motion to dismiss (Docket No. 32) be, and the same hereby is, GRANTED.

Dated: February 4, 2025

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE